## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BOBO ENGINEERING, INC., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 4:09-CV-644-VEH** |
| ) | |
| **PEOPLES INDEPENDENT BANK,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Before the Court are:

1)    The Defendant Peoples Independent Bank's Motion to Dismiss RICO

Claims or, In the Alternative, to Require Plaintiffs to File a Rico Case

Statement (Doc. 11)

2)    The Defendant Peoples Independent Bank's Motion to Dismiss or, In the

Alternative, Motion for More Definite Statement (Doc. 12), and

3)    The Defendant Peoples Independent Bank's Motion to Strike Plaintiffs'

Jury Demand (Doc. 14).

This case arises out of the theft of funds from Plaintiffs' banking account at a

branch of Defendant Peoples Independent Bank[1] ("Peoples").  Plaintiffs bring a claim under the  Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*., as well as other state law claims.  In relevant part, Peoples' Motion to Dismiss seeks dismissal of Plaintiffs' claims brought under RICO for failure to properly identify sufficient predicate acts to support a RICO claim and for failure to state a claim for a cognizable RICO injury.  As discussed in greater detail below, the Court finds that, while the Plaintiffs identify the requisite predicate acts to support their RICO cause of action, Plaintiffs have not pleaded a cognizable RICO injury and, therefore, Peoples' Motion to Dismiss RICO Claims is due to be **GRANTED.** Further, because the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims and therefore will dismiss this action, Peoples' remaining pending motions are due to be **TERMED AS MOOT**.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Jimmy R. Bobo, Russell H. Bobo, Brenda K. Bobo, Patricia O. Bobo, and Jill Bobo Shelton reside in Marshall County, Alabama and operate Plaintiff Bobo Engineering, Inc. ("Bobo Engineering"), a company that specializes in the manufacture of cable assemblies, wiring harness and electro-mechanical controls for

---

[1]  The only other defendant, Timothy Sims, has not answered or otherwise responded to Plaintiffs' Complaint.

its original equipment manufacturer (OEM) customer base in the medical, industrial and fire protection fields. (Doc. 1 at ¶¶ 1-6, 11.) In April, 2003, Bobo Engineering was contacted by Ronny Dobbins ("Dobbins"), Vice President of Defendant Peoples Independent Bank, Inc. ("Peoples") about a program called "Business Manager" which could be used to help finance Bobo Engineering's day to day operations. (*Id.* at ¶¶ 13.) In the Business Manager program, Bobo Engineering would fax or email Peoples a summary for all products shipped on each business day and upon receipt of the summary, Peoples would pay 88.1% of the total amount invoiced into Bobo Engineering's account. Peoples would keep 1.9% of the amount as a service charge and pay the remaining 10% into a reserve account that was designed to protect the bank against customers who failed to pay or who returned a product to Bobo Engineering. (*Id.* at ¶¶ 15-17.) When a purchaser ultimately paid an invoice, Peoples would credit this payment to Bobo's operating account and adjust the reserve. (*Id.* at ¶ 19.) Bobo also separately tracked its invoices and payments. (*Id.* at ¶ 20.)

Defendant Timothy Sims ("Sims") was responsible for operating the Business Manager program. Initially, the program worked well; however Sims became more and more inaccessible as time progressed. (*Id.* at ¶ 21.) In November, 2007, Sims telephoned Bobo Engineering and informed it that Peoples would not buy any more invoices and that Bobo Engineering had "maxed out" its available credit line of

3

$600,000.  (*Id.* at ¶ 22.)   Further, Sims reported that Bobo Engineering had outstanding invoices of over $800,000.  (*Id.*)  Bobo Engineering's own records showed that their outstanding invoices were much lower, amounting to approximately $300,000. (*Id.*)     Until the discrepancy could be resolved, Bobo wanted to make certain that its operating account was solvent, since it had nearly $100,000 in outstanding checks.  Thus, it requested that Sims contact Peoples' President, Royce Ogle ("Ogle"), and Dobbins to see if Peoples would temporarily increase Bobo Engineering's line of credit. (*Id.* at ¶ 24.)  After this request, Sims reported back that Peoples would not increase Bobo Engineering's line of credit.  (*Id.* at ¶ 25.) Representatives for Bobo Engineering then personally drove over to Peoples to see Dobbins and, during this meeting, Peoples assured Bobo Engineering's representatives that it would honor the outstanding checks.  (*Id.* at ¶ 26.)  However, soon after the meeting, Bobo Engineering began getting calls from its vendors that the checks were not being honored. (*Id.* at ¶ 27.)

Jim Bobo then went back to Peoples to meet with Dobbins and Ogle regarding the failure to honor all of the outstanding checks as promised and they informed Jim Bobo that the credit line was, as Sims had reported, "maxed out."  (*Id.* at ¶ 28.) Dobbins and Ogle also requested additional capital to cover what they purported to be approximately $900,000 in outstanding invoices in order to get Bobo

Engineering's account in good standing.  (*Id.*)  They agreed that they would cover the remaining outstanding checks and that they would continue to buy Bobo Engineering invoices once the additional collateral was in place.  (*Id.*)  Bobo Engineering refused to put up the additional collateral and again notified Peoples of the discrepancy between its own records and the bank's records.  (*Id.*)

Subsequently, Peoples honored approximately $50,000 of the outstanding checks but it refused to purchase the invoices and it charged Bobo Engineering with various fees for having insufficient funds.  (*Id.* at ¶ 30.)  Sims then called Bobo Engineering and explained that Peoples would no longer be operating the Business Manager program and he suggested that Bobo Engineering have an outside company purchase its account from Peoples.  (*Id.* at ¶ 31.)  Bobo Engineering then opened an account with another bank and informed Peoples that it was no longer doing business with it and that it was not going to pay Peoples anything until the matter was adequately investigated and resolved.  (*Id.* at ¶ 33.)

In December, 2007, Ogle and Dobbins arrived at Bobo Engineering's facilities, unannounced, and reported that Sims had been stealing out of the Business Manager program for the past three to four years.  (*Id.* at ¶ 34.)  They explained that they would inform Bobo Engineering of the correct status of the account once they had conducted an investigation.  (*Id.*)  In the fall of 2008, Ogle and Dobbins again

came to Bobo Engineering and explained that Sims had stolen over $300,000. (*Id.* at ¶ 35.)

To perpetuate his scheme, Sims had commingled the reserve funds of several different members of the Business Manager program and he then diverted the money from the operating account and reserve funds through the use of wire transfers in order to cover the receivables and reserves of other members of the Business Manager program. (*Id.* at ¶ 37-38.) Peoples derived increased interest and service charge fees on the Business Manager accounts through this carousel of funds. (*Id.* at ¶ 38.)

When informed of the scheme, Bobo Engineering requested documentation from Peoples regarding the account. (*Id.* at ¶ 40.) Ogle and Dobbins responded that it did not have the invoice receipts and Bobo Engineering offered to send its copies of the receipts, which had previously been forwarded to Sims, but Peoples declined to look at the receipts. (*Id.* at ¶ 40.)

On March 2, 2009, counsel for Peoples sent Bobo Engineering a letter demanding payment in the amount of $843,795.08 and threatening suit against Plaintiffs. On March 24, 2009, Peoples again threatened suit unless it heard from Bobo Engineering within ten days. (*Id.* at ¶ 42.)

Plaintiffs responded by filing their Complaint on March 31, 2009, availing themselves of this Courts jurisdiction under 28 U.S.C. § 1331. (Doc. 1.) Plaintiffs'

Complaint consisted of six counts, with their sole federal cause of action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and their remaining causes of action brought under various state law theories which range from breach of contract to the tort of outrage.  (*Id.*)  All parties are residents of the State of Alabama.  (*Id.* at ¶¶ 1-8.)

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* Fed. R. Civ. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *as abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also* Fed. R. Civ. P. 8(a).

A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations."  *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id*. at 563. In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the

plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks, citations, and brackets omitted).  Furthermore, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555.

## IV.    ANALYSIS

### A.    Motion to Dismiss

#### 1.    <u>Special pleading standards apply to RICO allegations involving fraud.</u>

Typically, claims asserted in civil cases must be pled in conformance with Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the [ ] claim is and the grounds upon which it rests."  *See also*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   A RICO claim, however, is not a "'typical' civil claim that may be sufficiently pled by following Rule 8. As the court explained in *Taylor v. Bear*

*Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga. 1983),

> [T]here are many sound reasons for requiring that, like fraud, [RICO claims] must be pled with particularity. First, the mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute. Second, the concepts within the statute are so nebulous that if the cause of action were only generally pled, a defendant would have no effective notice of a claim showing that the pleader is entitled to relief. Therefore, the court believes that it is appropriate to require that RICO be pled with the same particularity that is required in the pleading of fraud.

*See also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity . . . .").

"For [a] civil RICO claim, the Eleventh Circuit's pleading requirements per Rule 9(b) are more specific: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Construction Co.*, 482 F.3d at 1316-17 (affirming dismissal of complaint for failure to meet Rule 9(b) requirements). Plaintiffs must link their specific allegations to the causes of action pled in their complaint. *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1278-79 (11th Cir.2006).

In their Complaint, Plaintiffs seek relief under RICO, 18 U.S.C. § 1964(c), by virtue of Peoples' alleged violation of 18 U.S.C. § 1962(a).  (Doc. 1 at ¶ 51.) Specifically, Bobo claims as follows[2]:

46.     Peoples is a "person", as that term is defined in 18 U.S.C. § 1961(3).

47.     Peoples is an "enterprise", as that term is defined in 18 U.S.C. § 1961(4).

48.     The multiple acts of mail, telephone and wire fraud committed by Peoples constitute violations of 18 U.S.C. § 1341 and 1343 and constitute predicate acts of "racketeering activity" as that term is defined in 18 U.S.C. 1961(1).  Each such racketeering activity had the similar purpose of defrauding Bobo Engineering and involved the same participants and methods of commissions and therefore, constitute a continuous "pattern of racketeering activity."

49.     Peoples, by and through its agent, Sims, fraudulently induced Bobo Engineering to unlawfully fund the business manager program account and Peoples collected the unlawfully retained funds through a pattern of racketeering activity, including mail and wire fraud, and used the illicit funds for the benefit of Peoples and its employees and to cover Sims['s] illegal and unauthorized circulation of funds between other legitimate commercial businesses in the Peoples' Business Manager program.  Sims'[s] intervention prevented many of the deposits and payments made by Bobo Engineering['s] purchasers from being   forwarded to the appropriate accounts.    Additionally, the failure to appropriately fund the Bobo Engineering operating account and

---

[2]  Plaintiffs also, in typical "shotgun pleading" fashion, adopt and incorporate all of the allegations in the "Facts" section of its Complaint.  The text following this footnote does not reproduce those allegations, but the Court has reviewed them.  (Doc. 1 at ¶ 45.)

failure to take down the reserve account benefitted Peoples in that Peoples was able to hold monies due Bobo Engineering for a longer period, thus resulting in additional earned interest for Peoples, which Peoples accepted.

50.   Sims'[s] actions were incident to his assigned duty as the sole employee in charge of Peoples' Business Manager program and took place at Peoples during normal business hours. While Sims was in charge of Peoples' Business Manager Program he was promoted to branch manager. Sims'[s] activities did further the aspect of Peoples' business, specifically through expansion of the Business Manager program and the collection of fees. Sims'[s] actions were acquiesced by Peoples' demand to Bobo Engineering for the collection of the unlawful and fraudulent debt and fees created by Sims in furtherance of Peoples' business.

51.   Peoples thus unlawfully used income received directly from a pattern of racketeering activity and collection of unlawfully retained funds to control, establish and operate an enterprise that was engaged in and affected interstate commerce, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (a).

(Doc. 1 at ¶¶ 46-51 (emphasis added).)

Having established the legal standard used to scrutinize Plaintiffs' Complaint and having set forth the pertinent factual allegations in Plaintiffs' Complaint, the Court now turns to Peoples' arguments as to why a RICO violation has not been established.

2.      Plaintiffs allege sufficient predicate acts to support their RICO claim.

Peoples first argues that Plaintiffs' claim is due to be dismissed because the Complaint "fail[s] to plead the alleged RICO predicate acts (mail fraud, telephone fraud, or wire fraud) with the required particularity to support their RICO claim . . . ." (Doc. 11 at 4.)  Specifically, Peoples maintains that Plaintiffs have not adequately pleaded that Defendants engaged in a "pattern of racketeering activity." (*Id.*)  In response, Plaintiffs argue that "Peoples' own Motion demonstrates that Peoples understands the nature of the allegations and the manner with which Bobo Engineering alleges Peoples was involved as it lays out much of the factual predicate upon which Bobo Engineering seeks redress." (Doc. 18 at 2.)  Further, Plaintiffs cite extensively from their Complaint and summarily conclude that "[i]t is clear from the numerous and specific factual allegations in the Complaint that Peoples . . . used almost any means necessary (be it telephone, mail or wire) for purposes of executing its scheme . . . ." (*Id.* at 6.)

"The four elements of civil RICO liability are (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Langford v. Rite Aid of Ala., Inc.,* 231 F.3d 1308, 1311 (11th Cir.2000). "Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10-year period." *Id.* at 1311-12 (citing 18 U.S.C. § 1961(5)). "The

phrase 'racketeering activity' is defined as any act which is indictable under a lengthy list of criminal offenses," including mail fraud and wire fraud. *Id.* at 1312; *see also* 18 U.S.C. § 1961(1).

In their Complaint, Plaintiffs refer to "multiple acts of mail, telephone and wire fraud committed by Peoples" as the predicate acts for their RICO claims. (Doc. 1 at ¶ 48.) Thus, the Court now turns to defining mail and wire fraud.

Under 18 U.S.C. § 1341, mail fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more

than 30 years, or both.

Regarding wire fraud, 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991). "Under the mail fraud statute, a plaintiff must allege a scheme to defraud where some type of deceptive conduct occurred." *American United*, 480 F.3d at 1065 (citation omitted) (affirming dismissal of civil RICO claim where plaintiff failed to allege either affirmative misrepresentations or, to the extent claim was predicated on fraudulent concealment or nondisclosure, that defendants had a duty to disclose). "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential

14

part of the scheme satisfies the mailing element." *Bridge*, 128 S.Ct. at 2138. Therefore, in order to pass muster on Rule 12(b)(6) review, a RICO claim predicated on mail or wire fraud must allege specific facts to show that Defendants participated in a scheme to defraud others of money or property, and that on at least two occasions they used the mail or wires in furtherance of their scheme.

Viewed in the light most favorable to the Plaintiffs, Plaintiffs have adequately pleaded both wire and mail fraud. Specifically, Plaintiffs allege that "at the end of . . . [each business] day, Bobo Engineering would either fax or email to Peoples a Total Summary Invoice register, which showed the invoice numbers and dollar amounts for each product shipped that day." (Doc. 1 at ¶ 15.) Further, "invoices were paid directly to Peoples via check [i.e., mail], or Automated Clearing House [i.e., via wire]. (*Id.* at ¶ 23.) Also, "[c]heck stubs or [Automated Clearing House] transaction receipts were then forwarded [by Peoples] to Bobo Engineering [by mail or wire] . . . ." (*Id.*) Therefore, Peoples, through its agent Sims, "collect[ed] [and] unlawfully retained funds" in connection with its scheme to defraud Bobo Engineering through use of the mail and by means of wire. (Doc. 1 at ¶ 51.) Further, "Peoples and Sims diverted Bobo Engineering operating account and reserve funds through the use of wire transfers. Peoples routinely authorized the electronic transfer of funds from Bobo Engineering's account(s) maintained by Peoples, to various accounts maintained in its

branches in Alabama." (*Id.* at ¶ 37.)  Plaintiffs have, consequently, alleged specific predicate acts so as to survive dismissal of their RICO claims on this basis.  Although Peoples claims that the language in paragraph 23 of the Complaint is too general to establish that the transactions constitute predicate acts (Doc. 19 at 5), the Court rejects this argument because it is illogical to conclude that Peoples received checks via anything other than the United States Postal Service or via an electronic funds transfer or forwarded transaction receipts to Bobo Engineering via anything other than mail or wire.  Furthermore, Plaintiffs allege that "Bobo Engineering would either fax or mail to Peoples a Total Summary Invoice" at the end of each business day.  Such sendings by Bobo Engineering by wire transmission logically allege receipt by Peoples, also by means of wire transmissions.  Indeed, the Plaintiffs specifically allege that "[t]he multiple acts of mail, telephone[,] and wire fraud committed by Peoples constitute violations of 18 U.S.C. §[§] 1341 and 1343 and constitute predicate acts of 'racketeering activity' as that term is defined in 18 U.S.C. [§] 1961(1)."  (Doc. 1 at ¶ 48.)

### 2.    Plaintiffs have not stated a cognizable RICO injury.

Next, Peoples argues that Plaintiffs have not plead a violation of 18 U.S.C. § 1962(a) because Plaintiffs have not shown how they were injured "by reason of" Peoples' investment of any alleged racketeering income in a RICO enterprise.  (Doc.

11 at 10-11.)

In pertinent part, 18 U.S.C. § 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce . . .

(emphasis added). Section 1964(c), which authorizes a civil suit brought under RICO, permits recovery only for a person injured in his business "by reason of violation of section 1962 . . . ." Thus, in order to state a cognizable claim under Section 1962(a), Plaintiffs must establish that they were injured as a result of Peoples' use or investment of racketeering income.

Although the Eleventh Circuit has not had the occasion to speak to this issue, a majority of circuit courts have concluded that the injury requirement under Section 1962(a) can only be satisfied by pleading an injury that results from the investment of racketeering income rather than direct injury from the predicate acts themselves. The Honorable John Antoon II, United States District Judge for the Middle District of Florida succinctly summarized the requirement that plaintiffs suffer an "investment injury" in *Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp. 2d 1350 (M.D. Fla.

17

2005).  In that decision, Judge Antoon explained:

In order to have standing to sue for violations of RICO, a plaintiff must allege both "but-for" and proximate causation. *See Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994) ("RICO plaintiffs must prove proximate causation in order to recover.") (citing *Holmes v. Sec. Investor Prot. Corp*., 503 U.S. 258, 267-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *N.O.W. v. Scheidler*, 968 F.2d 612 (7th Cir.1992), *rev'd on other grounds*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1992)). In contrast to the injury requirement under § 1962(c), which may be satisfied by harm alleged to be the result of racketeering activity, a majority of courts that have addressed the issue have determined that a claimant under § 1962(a) must plead an injury which stems not "from the racketeering predicate acts themselves" but from the "use or investment of ... racketeering income." *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 895 (8th Cir.1999) (adopting the majority position which limits "standing only to plaintiffs who have suffered injury from the use or investment of the racketeering income") (citing *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir.), cert. denied, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994) (limiting standing to plaintiffs suffering injury from use or investment of racketeering income)); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir.1992), cert. denied, 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993) (same); *Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 584 & n. 4 (5th Cir.1992) (same); *Glessner v. Kenny*, 952 F.2d 702, 708-10 (3d Cir.1991) (same); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229-30 (D.C.Cir.1991) (same); *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir.1990) (same); *Grider v. Tex. Oil & Gas Corp.*, 868 F.2d 1147, 1149-51 (10th Cir.), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989) (same). *But see Busby v. Crown Supply, Inc.*, 896 F.2d 833, 836-40 (4th Cir.1990) (holding that plaintiffs can satisfy the injury requirement by alleging injuries which result from the racketeering acts themselves); *see also In re Managed Care Litig.*, 150 F.Supp.2d 1330, 1351 (S.D.Fla.2001) (adopting the Fourth Circuit's position).

357 F. Supp. 2d at 1369; *see also City of Huntsville v. Proliance Energy, LLC*, No.

5:02-CV-01296-VEH, slip op. at 5-7 (N.D. Ala. Dec. 9, 2004) (rejecting the Fourth

Circuit's position and granting summary judgment in favor of the defendant when the

plaintiff had not alleged an "investment injury").  Plaintiffs argue that they incurred

damages as a result of increased debt and expenses and loss of business.  (Doc. 18 at

7.)  They counter Peoples' damages argument by stating that the damages in this case

are similar to those in an Eleventh Circuit RICO case, *Quick, et al. v. Peoples Bank*

*of Cullman County, et al.*, 993 F.2d 793 (11th Cir. 1993).  (Doc. 18 at 7.)   *Quick*,

however is inapplicable to this case because the plaintiff in *Quick* brought suit under

Section 1962(b).  993 F.3d at 796.  Section 1962(b) makes it unlawful "for any person

through a pattern of racketeering activity or through collection of an unlawful debt"

to acquire an interest in an enterprise engaged in interstate commerce.  Thus, because

*Quick* was brought under a separate statutory provision, it contains no analysis as to

whether the plaintiffs were injured <u>as a result of the investment of racketeering</u>

<u>income</u>.

    Plaintiffs have not cited to any case other than *Quick* to support their argument

that they have pleaded a cognizable RICO injury under Section 1962(a).  Peoples, on

the other hand, cites to numerous district court cases in this circuit where the court has

dismissed a plaintiff's RICO claim brought under Section 1962(a) for failing to plead

injury incurred as a result of the use or investment of racketeering income.  (Doc. 20

at 7 n.4 (citing cases).)  This Court agrees with Peoples' position.

A number of district courts within the Eleventh Circuit have dismissed Section 1962(a) RICO claims for failing to properly allege an investment injury. *See, e.g.*, *Super Vision Intern., Inc. v. Mega Intern. Commercial Bank Co.*, 534 F.Supp.2d 1326, 1341-42 (S.D.Fla. 2008) ("Although the Eleventh Circuit has not yet directly addressed this issue, I conclude that the Eleventh Circuit would likely follow the rulings of the majority of circuits and require that the plaintiff in a civil RICO action under § 1962(a) show an injury resulting from the investment of racketeering proceeds. Here, Super has failed to allege that it has suffered an injury resulting from Mega's alleged investment of the fees and charges it retained from Wu's accounts. Therefore, I dismiss Super's claims under § 1962(a)."); *Fuller v. Home Depot Services, LLC*, 512 F.Supp.2d 1289, 1294 (N.D.Ga. 2007) ("To sufficiently plead an injury under this subsection, the plaintiff must allege that he sustained injury from Home Depot's investment of racketeering income . . . However, the plaintiff's complaint does not allege any injury resulting from Home Depot's investment of racketeering income. The complaint merely alleges injury as a result of Home Depot's alleged racketeering activity, mail and wire fraud. Consequently, the plaintiff's claim under § 1962(a) is insufficient and Count I of the plaintiff's amended complaint is dismissed."); *Acosta v. Campbell*, 2006 WL 146208 *11 (M.D.Fla. 2006.) ("Acosta alleges injury from his

payment of an unlawful debt to Defendants, not from Defendants' investment of any unlawful debt income; thus, Acosta has failed to plead a cognizable claim under section § 1962(a)."); *Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp.2d 1350, 1371 (M.D.Fla. 2005) ("[M]ere reinvestment of the racketeering proceeds into a business activity is not sufficient for § 1962(a) standing . . . . The only injuries claimed by Lockheed Martin are alleged to be the result of Defendants' investment in Boeing and are, therefore, prime illustrations of "reinvestment" injuries. Hence, Lockheed Martin's § 1962(a) claim fails for the additional reason that it does not properly allege an investment injury."); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F.Supp.2d 1276, 1288 (S.D.Ga. 2003) (The § 1962(a) plaintiff "must demonstrate an injury caused by the use or investment of income derived from racketeering activity, not just that it was injured by the underlying predicate acts . . . . [Plaintiffs] here have not alleged any injury resulting from the investment of racketeering income. Accordingly, their claim under § 1962(a) must fail."); *State of Ga. ex rel. Bowers v. Dairymen*, 813 F.Supp. 1580, 1584 (S.D.Ga. 1991) ("The analysis is straightforward. A private cause of action under Section 1964(c) requires injury by reason of a violation of Section 1962(a). In order to violate Section 1962(a), one must invest racketeering income. Thus, the plain language of Federal RICO shows that injury by reason of investment of racketeering income–investment injury–is required . . . . The State has failed to

21

allege investment injury; thus, the Complaint fails to state a Section 1964(c)/1962(a) cause of action.").   At least one district court within the Eleventh Circuit has adopted the view that predicate acts themselves and not "investment injury" can constitute the injury requirement for a Section 1962(a) RICO claim, *see In re Managed Care*, 150 F.Supp.2d 1330, 1351 (S.D.Fla.2001), but the court in that case followed the Fourth Circuit's approach which, as discussed *supra*, is the minority position, was rejected by this Court in *City of Huntsville v. Reliance Energy, LLC*, and runs contrary to every other circuit court that has addressed this issue.   Thus, although the Eleventh Circuit has not ruled on this issue, this Court agrees with the substantial majority of other circuit courts and the substantial majority of district courts within the Eleventh Circuit in concluding that Plaintiffs must allege an "investment injury" to state a claim under Section 1962(a) of RICO.   Otherwise, as the Fifth Circuit explained in *St. Paul Mercury Ins. Co.*, "it would be difficult to understand why Congress enacted § 1962(a)" when injury from predicate acts alone would have been sufficient to state a claim under Section 1962(c).   224 F.3d at 443.

Plaintiffs fail to state a cognizable RICO claim because they do not allege that they suffered an "investment injury."   In a comparable case, *Super Vision International, Inc. v. Mega International Commercial Bank Co., Ltd.*, 534 F. Supp. 2d 1326 (S.D. Fla. 2008), the plaintiff alleged that the defendant bank violated Section

1962(a) by benefitting from service charges and other fees from funds illegally withheld from the plaintiff. *Id.* at 1334. These funds were, according to the plaintiff, withheld and invested in violation of Section 1962(a). *Id.* at 1341. The plaintiff alleged that it suffered injury because the defendant bank caused it to suffer expense and adverse effects on its business operations as a result of the plaintiff's attempt to recover the funds. *Id.* 1335. The court found that the Section 1962(a) claim did not allege an "investment injury" and was therefore due to be dismissed; the plaintiff did not allege "that it [had] suffered an injury resulting from  [the defendant's] <u>alleged investment of the fees and charges it retained . . . .</u>" *Id.* at 1342 (emphasis added).

Like the plaintiff in *Super Vison*, Plaintiffs in the instant case allege that they were injured only because Peoples allegedly "unlawfully retained" monies from Bobo Engineering's bank account. (*See* Doc. 1 at ¶¶ 48-51.)  No set of facts alleged by Plaintiffs suggest that they suffered an "investment injury."  "[M]ere reinvestment of the racketeering proceeds into a business activity is not sufficient for § 1962(a) standing." *Lockheed Martin Corp. v. Boeing Co.*, 357 F.Supp.2d at 1371 (citing *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1110 (9th Cir.2003) (rejecting appellant's "reinvestment theory" and noting that "[s]everal courts, applying an investment injury requirement, have held that 'the acquisition and reinvestment of the proceeds of racketeering activity in the general affairs of an enterprise' does not qualify as

investment injury"); *Vicom v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n. 6 (7th Cir.1994) (stating that "the majority view is that the mere reinvestment of the racketeering proceeds into a business activity is not sufficient for § 1962(a) standing"); *Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir.1991) ("The direct cause of plaintiffs' alleged injuries was the fraudulent conduct. Plaintiffs have neither alleged nor demonstrated a connection with the use or investment of racketeering income other than the normal reinvestment of corporate profits."). Consequently, Plaintiffs have not stated a claim under Section 1962(a).  Having failed to state a cognizable claim for injury under Section 1962(a) in the instant case, Count One of the Plaintiffs' Complaint is deficient and it is therefore due to be dismissed.

### 3.   <u>Dismissal is the appropriate remedy</u>.

Notwithstanding the fact that Peoples has requested an alternative remedy of requiring Plaintiffs to file a RICO case statement (*see* Doc. 18), the Court finds that dismissal of Plaintiffs' RICO claim is the appropriate remedy. As Plaintiffs themselves recognize, requiring a RICO case statement would be, in substance, akin to a requirement that Plaintiffs file an amended complaint in response to a motion for more definite statement under Rule 12(e).  (Doc. 18 at 8.)  While this might have been the appropriate remedy had the Court found that Plaintiffs had not alleged sufficient predicate acts based on the facts alleged in their Complaint, it is not the appropriate

remedy to correct Plaintiffs' failure to allege a cognizable RICO injury.  As noted

*supra*, courts who have concluded that a plaintiff's complaint does not properly allege

an "investment injury" have dismissed the RICO claim.  While it appears that none of

the cases cited above ruled on a motion to dismiss that requested in the alternative that

the plaintiff file a RICO case statement, it is difficult to see how filing such a more

definite statement would cure the deficiency in Plaintiffs' Complaint.  Plaintiffs fail

to state a claim for violation of Section 1962(a); therefore, Count One should be

dismissed.

Based upon the detailed factual allegations in the complaint, there is no basis

to conclude that Plaintiff could plead sufficient facts to allege an investment injury

under § 1962(a).  The injuries allegedly suffered by Plaintiffs are described in detail

in the Complaint but the alleged injuries are simply not the kind of injuries required

to state a claim under § 1962(a).   Therefore, such leave would be futile. *See*

*Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir.2000)

(recognizing that a district court appropriately exercises its discretion in denying leave

to amend when such amendment would be futile).  Further, Plaintiffs are represented

by counsel and never requested leave to amend or made any arguments that alleged

facts could be plead that would meet the standard required to show investment injury.

Under these facts and circumstances, the Court will not *sua sponte* give Plaintiffs

leave to amend. *Wagner v. Daewoo Heavy Industries America Corp*, 314 F.3d 541, 542 (11th Cir. 2002) (noting that, prior to dismissing a case with prejudice for failure to state a claim, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend . . . .").

Both parties mention that, in *Cruz v. Cinram Intern., Inc.*, 574 F. Supp. 2d 1227 (N.D. Ala. 2008), this Court ordered the plaintiff in a RICO case to provide a RICO case statement when it found that the complaint was deficient. However, the facts in *Cruz* are distinguishable from the instant case because the complaint in *Cruz* was deficient only in that it did not contain detailed factual allegations, such as to put the defendant on notice of its fraudulent conduct. 574 F. Supp. 2d at 1233. The defendant in *Cruz* also did not request dismissal of the complaint, unlike the instant case; it only requested that the plaintiff be required to file a RICO case statement. *Id.* at 1229. Additionally, unlike its decision in the instant case, this Court did not find (indeed, the defendants did not even contend) that the *Cruz* plaintiffs failed to state a cognizable RICO injury. For these reasons, *Cruz* is inapplicable and dismissal of Plaintiffs' RICO claim (Count One) is the appropriate remedy.

**C.    State Law Claims**

Having found that Plaintiffs' RICO claim is due to be dismissed, this Court

declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims.

Under 28 U.S.C. § 1367(c)(3) a court may decline to exercise its jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." While the language of Section 1367(c)(3) is discretionary, binding case law in the Eleventh Circuit "leans toward dismissing state-law claims in the absence of a federal claim to tether them to federal court." *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 605 F.Supp. 2d 1220, 1230 (M.D. Ala. 2009) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir.1999) ("This court has noted that if the federal claims are dismissed prior to trial, [precedent] strongly encourages or even requires dismissal of state claims.") (internal quotation omitted); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.")). This action was filed on March 31, 2009. It is still in its "early stages." Therefore, exercising its discretion, this Court finds that Plaintiffs' remaining state law counts of breach of contract, fraud, conversion, and outrage are due to be dismissed as well.

## V.   CONCLUSION

For the reasons discussed above, Peoples' Motion to Dismiss (Doc. 11) is due

to be **GRANTED**.  Plaintiffs' RICO claim (Count One) is due to be **DISMISSED WITH PREJUDICE** because the Complaint does not state a claim for an injury that is cognizable under 18 U.S.C. § 1962(a).  Plaintiffs' remaining state law claims (Counts Two through Six) are due to be **DISMISSED WITHOUT PREJUDICE**. Because the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims, Peoples' Motion to Dismiss, or, In the Alternative, Motion for More Definite Statement (Doc. 12) and Motion to Strike Jury Demand (Doc. 14) are due to be **TERMED AS MOOT**.  A separate Order will be entered.

**DONE** and **ORDERED** this the 18th day of June, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge