# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **BOBO ENGINEERING, INC.,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:09-CV-644-VEH** |
| | ) |
| **PEOPLES INDEPENDENT BANK,** | ) |
| *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on "Plaintiffs' Amended Rule 59(e) Motion to Reconsider and Request for Leave to Amend the Complaint."[1] ("Amended Motion to Reconsider") (doc. 31). Plaintiffs attached a proposed "Amended and Restated Complaint" ("Proposed Amended Complaint") as an exhibit to the Amended Motion to Reconsider. (doc. 31-2). The motion is opposed by Defendant Peoples Independent Bank ("Peoples").[2] Upon consideration of the motion and the parties' briefs, and for the reasons stated herein, the Court concludes that the Amended

---

[1] Plaintiffs previously filed a "Motion to Reconsider and Request for Leave to Amend the Complaint" ("Motion to Reconsider"). (doc. 28). That motion was not ruled on prior to Plaintiffs' filing of their amended motion. Accordingly, because the original Motion to Reconsider has been superceded by the amended motion, it is **DENIED** as moot.

[2] Defendant Timothy Sims did not file a written opposition to the instant motion; however, he filed a brief in opposition to the original Motion to Reconsider. (doc. 30).

Motion to Reconsider is due to be **GRANTED**, but only to the extent that this case will be reopened for the purpose of allowing Plaintiffs an opportunity to file an amended complaint that is consistent with the provisions of this Memorandum Opinion and Order.[3]

## I.    Factual and Procedural Background

The relevant factual allegations are as follows:[4]

Plaintiffs Jimmy R. Bobo, Russell H. Bobo, Brenda K. Bobo, Patricia O. Bobo, and Jill Bobo Shelton reside in Marshall County, Alabama and operate Plaintiff Bobo Engineering, Inc. ("Bobo Engineering"), a company that specializes in the manufacture of cable

---

[3] Plaintiffs will not be permitted to file the Proposed Amended Complaint for the reasons discussed *infra*.

[4] The "facts," as they are restated herein from this Court's Memorandum Opinion of June 18, 2009 (doc. 25), were gleaned from Plaintiffs' Complaint (doc. 1). Plaintiffs' Proposed Amended Complaint and the original Complaint assert, verbatim, the same allegations of fact, with one exception. Paragraph 23 of the Proposed Amended Complaint has been slightly modified and it reads as follows:

Invoices were paid directly to Peoples via check or Automated Clearing House (ACH). The checks were sent using the United Stated Postal Service and ACH transactions or electronic fund transfers were sent via wire. Payments were posted to Bobo Engineering's accounts receivable ledger by Peoples and check stubs or ACH transaction receipts were then forwarded to Bobo Engineering. The forwarded check stubs and transaction receipts were likewise sent using the United States Postal Service or via wire transfer. Defendants['] use of the mail and wire transfers to perpetuate their fraud, as outline[d] more fully below, constitute violations of 18 U.S.C. § 1341 and 1343 (mail and wire fraud).

(doc. 31-2, at ¶ 23). For purposes of ruling on the instant motion, the Court has only considered the factual averments of the Proposed Amended Complaint.

assemblies, wiring harness and electro-mechanical controls for its original equipment manufacturer (OEM) customer base in the medical, industrial and fire protection fields. (Doc. 1 at ¶¶ 1-6, 11.)  In April, 2003, Bobo Engineering was contacted by Ronny Dobbins ("Dobbins"), Vice President of Defendant Peoples Independent Bank, Inc. ("Peoples") about a program called "Business Manager" which could be used to help finance Bobo Engineering's day to day operations. (*Id.* at ¶¶ 13.)  In the Business Manager program, Bobo Engineering would fax or email Peoples a summary for all products shipped on each business day and upon receipt of the summary, Peoples would pay 88.1% of the total amount invoiced into Bobo Engineering's account. Peoples would keep 1.9% of the amount as a service charge and pay the remaining 10% into a reserve account that was designed to protect the bank against customers who failed to pay or who returned a product to Bobo Engineering. (*Id.* at ¶¶ 15-17.)  When a purchaser ultimately paid an invoice, Peoples would credit this payment to Bobo's operating account and adjust the reserve. (*Id.* at ¶ 19.)  Bobo also separately tracked its invoices and payments. (*Id.* at ¶ 20.)

Defendant Timothy Sims ("Sims") was responsible for operating the Business Manager program.  Initially, the program worked well; however Sims became more and more inaccessible as time progressed. (*Id.* at ¶ 21.)  In November, 2007, Sims telephoned Bobo Engineering and informed it that Peoples would not buy any more invoices and that Bobo Engineering had "maxed out" its available credit line of $600,000. (*Id.* at ¶ 22.)  Further, Sims reported that Bobo Engineering had outstanding invoices of over $800,000. (*Id.*)  Bobo Engineering's own records showed that their outstanding invoices were much lower, amounting to approximately $300,000. (*Id.*)  Until the discrepancy could be resolved, Bobo wanted to make certain that its operating account was solvent, since it had nearly $100,000 in outstanding checks. Thus, it requested that Sims contact Peoples' President, Royce Ogle ("Ogle"), and Dobbins to see if Peoples would temporarily increase Bobo Engineering's line of credit. (*Id.* at ¶ 24.)  After this request, Sims reported back that Peoples would not increase Bobo Engineering's line of credit. (*Id.* at ¶ 25.)  Representatives for Bobo Engineering then personally drove over to Peoples to see Dobbins and, during this

meeting, Peoples assured Bobo Engineering's representatives that it would honor the outstanding checks. (*Id.* at ¶ 26.)  However, soon after the meeting, Bobo Engineering began getting calls from its vendors that the checks were not being honored. (*Id.* at ¶ 27.)

Jim Bobo then went back to Peoples to meet with Dobbins and Ogle regarding the failure to honor all of the outstanding checks as promised and they informed Jim Bobo that the credit line was, as Sims had reported, "maxed out."  (*Id.* at ¶ 28.)  Dobbins and Ogle also requested additional capital to cover what they purported to be approximately $900,000 in outstanding invoices in order to get Bobo Engineering's account in good standing.  (*Id.*)  They agreed that they would cover the remaining outstanding checks and that they would continue to buy Bobo Engineering invoices once the additional collateral was in place.  (*Id.*)  Bobo Engineering refused to put up the additional collateral and again notified Peoples of the discrepancy between its own records and the bank's records.  (*Id.*)

Subsequently, Peoples honored approximately $50,000 of the outstanding checks but it refused to purchase the invoices and it charged Bobo Engineering with various fees for having insufficient funds.  (*Id.* at ¶ 30.)  Sims then called Bobo Engineering and explained that Peoples would no longer be operating the Business Manager program and he suggested that Bobo Engineering have an outside company purchase its account from Peoples.  (*Id.* at ¶ 31.)  Bobo Engineering then opened an account with another bank and informed Peoples that it was no longer doing business with it and that it was not going to pay Peoples anything until the matter was adequately investigated and resolved. (*Id.* at ¶ 33.)

In December, 2007, Ogle and Dobbins arrived at Bobo Engineering's facilities, unannounced, and reported that Sims had been stealing out of the Business Manager program for the past three to four years.  (*Id.* at ¶ 34.)  They explained that they would inform Bobo Engineering of the correct status of the account once they had conducted an investigation.  (*Id.*)  In the fall of 2008, Ogle and Dobbins again came to Bobo Engineering and explained that Sims had stolen over $300,000. (*Id.* at ¶ 35.)

4

To perpetuate his scheme, Sims had commingled the reserve funds of several different members of the Business Manager program and he then diverted the money from the operating account and reserve funds through the use of wire transfers in order to cover the receivables and reserves of other members of the Business Manager program. (*Id.* at ¶ 37-38.) Peoples derived increased interest and service charge fees on the Business Manager accounts through this carousel of funds. (*Id.* at ¶ 38.)

When informed of the scheme, Bobo Engineering requested documentation from Peoples regarding the account. (*Id.* at ¶ 40.) Ogle and Dobbins responded that it did not have the invoice receipts and Bobo Engineering offered to send its copies of the receipts, which had previously been forwarded to Sims, but Peoples declined to look at the receipts. (*Id.* at ¶ 40.)

On March 2, 2009, counsel for Peoples sent Bobo Engineering a letter demanding payment in the amount of $843,795.08 and threatening suit against Plaintiffs. On March 24, 2009, Peoples again threatened suit unless it heard from Bobo Engineering within ten days. (*Id.* at ¶ 42.)

Plaintiffs responded by filing their Complaint on March 31, 2009, availing themselves of this Court's jurisdiction under 28 U.S.C. § 1331. (Doc. 1.) Plaintiffs' Complaint consisted of six counts, with their sole federal cause of action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and their remaining causes of action brought under various state law theories which range from breach of contract to the tort of outrage. (*Id.*) All parties are residents of the State of Alabama. (*Id.* at ¶¶ 1-8.)

*Bobo Engineering, Inc., et al. v. Peoples Independent Bank, et al.*, No. 4:09-CV-644-VEH, doc. 25, at 2-7 (N.D. Ala. June 18, 2009).

On June 18, 2009, this Court held that Plaintiffs failed to allege a cognizable RICO injury for purposes of maintaining a claim under 18 U.S.C. § 1962(a). That

claim was dismissed with prejudice.  (docs. 25 and 26).  The Court also decided not to exercise supplemental jurisdiction over Plaintiffs' state law claims.  (*Id.*).  The case was closed.  (*Id.*).

Shortly thereafter, Plaintiffs filed the Motion to Reconsider pursuant to Federal Rule of Civil Procedure 59(e).  The Court subsequently held a telephonic conference with counsel for the parties.  Thereafter, Plaintiffs filed the instant motion.[5]

In the Proposed Amended Complaint, Plaintiffs assert RICO claims under 18 U.S.C. §§ 1962(b), (c), and (d), and reassert the state law claims brought in the original Complaint.

## III.   Discussion

Peoples argues that there is no legal basis under which the instant Rule 59(e) motion can be granted.  With regard to Plaintiffs' petition for leave to file an amended complaint, Peoples contends that the liberal rule of permitting amended pleadings does not apply after a case has been dismissed and that the request is, nevertheless, due to be denied under the doctrine of futility.

### A.   Plaintiffs' Rule 59(e) Motion

"The purpose of a Rule 59(e) motion is not to raise an argument that was

---

[5] The parties agree that Plaintiff's Amended Motion to Reconsider is properly characterized as a Rule 59(e) motion.

6

previously available, but not pressed." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998). A party may not "use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Essentially, a Rule 59(e) motion will not be granted when a party simply disagrees with the district court's decision but offers no new law or evidence. *See id.* That said, there is some authority that Rule 59(e) motions may be granted for the following reasons: (1) to account for an intervening change in controlling law; (2) to address newly-discovered or previously-unavailable evidence; or (3) to correct a clear error or prevent manifest injustice. *See Smith v. United States*, 263 Fed. Appx. 853, 855 (11th Cir. 2008) (suggesting that a Rule 59(e) motion to alter or amend a judgment is properly denied where the movant fails to show "that there was a change in the law, new evidence, a clear legal error, or manifest injustice"); *Cover v. Wal-Mart Stores Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) ("Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.").[6]

The trial judge has discretion whether to alter or amend a judgment, and her

---

[6] District court decisions, even from this district, are not controlling authority.

decision will not be overturned on appeal absent abuse of that discretion.  *See Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985).  "In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."  11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (1995).

As noted above, Plaintiffs seek reconsideration of the June 18, 2009, Order Dismissing Case.  Plaintiffs expressly state that they are *not* arguing that the Court was incorrect to dismiss their claim brought under § 1962(a).  (doc. 31, p.3 n.1) ("Plaintiffs are not attempting to amend this Court's Order as it pertains to § 1962(a).").  Moreover, Plaintiffs do not contend that the Court's decision to decline supplemental jurisdiction over their state law claims was erroneous.  Rather, "[t]he relief sought by Plaintiffs in the case *sub judice* is simply a request to amend only that part of the judgment dismissing Plaintiffs' case, in order to allow Plaintiffs to amend their Complaint.  No other relief or amendment to the Court's judgment is sought." (doc. 31, p.3).

Peoples argues that there is no basis under which this Court could properly grant a Rule 59(e) petition in light of Plaintiffs' failure to object to the legality of the June 18, 2009, final order of dismissal.  The Court largely agrees with Peoples' assessment in that Plaintiffs have neither argued nor demonstrated that the June 18,

2009, Memorandum Opinion and Order were erroneous or that new evidence that was previously unavailable mandates reconsideration.

However, a court is within its discretion to grant a Rule 59(e) motion where failing to do so would result in a manifest injustice.  In this case, as more fully discussed *infra*, Plaintiffs have articulated a cognizable RICO claim within their Proposed Amended Complaint.  For that reason, the Court finds that failing to reopen this case, for the purpose of allowing Plaintiffs file an amended complaint that asserts a RICO claim that is not futile and that was not brought in the original Complaint, would result in a manifest injustice and would frustrate the interests of judicial economy.  Accordingly, the disposition of the present Rule 59(e) motion in Plaintiffs' favor ultimately turns on the merits of the claims asserted in Plaintiffs' Proposed Amended Complaint.

### B.    Plaintiffs' Petition for Leave to File an Amended Complaint [7]

### 1.    Federal Rule of Civil Procedure 15(a) governs

Plaintiffs posit that their request for leave to file an amended complaint is due to be granted under the liberal provisions of Federal Rule of Civil Procedure 15(a).  Peoples, however, contends that the liberal requirements of Rule 15(a) are

---

[7] This Court does not reach the issue of whether Plaintiffs would have been granted leave to amend their complaint had this case not been dismissed.

inapplicable after the entry of a final order of dismissal.  Interestingly, Peoples does not suggest an alternative method of evaluating the merits of Plaintiffs' Proposed Amended Complaint, but that omission is of no consequence.  Peoples is incorrect that the liberal provisions of Rule 15 cease to be operational once a case has been dismissed.

The law of the Eleventh Circuit clearly mandates that a district court must be mindful "that amendments are to be liberally granted" in cases where a plaintiff seeks leave to file an amended complaint after a case has been dismissed.  *Czeremcha v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984) ("[W]e find it appropriate to adopt the rule that after a complaint is dismissed the right to amend under Rule 15(a) terminates; the plaintiff, however, may still move the court for leave to amend, and such amendments should be granted liberally. The plaintiff may also move for relief under Rules 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered.") (internal footnotes and citations omitted).  Accordingly, this Court will analyze the merits of Plaintiffs' motion for leave in keeping with the notion that leave to amend should be liberally granted.

### 2.    Peoples' futility arguments

Peoples argues that, if the Court reaches the merits of Plaintiffs motion for

leave to file an amended complaint, the motion should be denied under the doctrine of futility. "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessary fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). "The futility standard is comparable to that applicable to a motion to dismiss." *See B.D. Stephenson Trucking, L.L.C. v. Riverbrooke Capital*, No. 5:06-CV-0343-WS, 2006 WL 2772673, at *6 (S.D. Ala. Sept. 25, 2006) ("[T]hus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied.") (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("denial of leave to amend justified by futility when 'complaint as amended is still subject to dismissal'"); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) ("amendment is futile if cause of action asserted therein could not withstand motion to dismiss") (other citation omitted)). Consequently, the Court will analyze the merits of the Proposed Amended Complaint under the applicable standard for a Rule 12(b)(6) motion.

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *as abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also* FED. R. CIV. P. 8(a).

A plaintiff must provide the grounds of his entitlement, but Rule 8 does not require "detailed factual allegations." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. In evaluating a motion to dismiss, the Court assumes that all factual allegations set forth in the complaint are true, *see United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks, citations, and brackets omitted). Furthermore, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555.

A RICO claim, however, is not a "'typical' civil claim that may be sufficiently

pled by following Rule 8. As the court explained in *Taylor v. Bear Stearns & Co.*,

572 F.Supp. 667, 682 (N.D. Ga. 1983),

> [T]here are many sound reasons for requiring that, like fraud, [RICO claims] must be pled with particularity.  First, the mere invocation of the statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit and generate suspicion and unfavorable opinion of the putative defendant unless there is some articulable factual basis which, if true, would warrant recovery under the statute.  Second, the concepts within the statute are so nebulous that if the cause of action were only generally pled, a defendant would have no effective notice of a claim showing that the pleader is entitled to relief.  Therefore, the court believes that it is appropriate to require that RICO be pled with the same particularity that is required in the pleading of fraud.

*See also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th

Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims,

must be pled with an increased level of specificity . . . .").

"For [a] civil RICO claim, the Eleventh Circuit's pleading requirements per

Rule 9(b) are more specific: (1) the precise statements, documents, or

misrepresentations made; (2) the time and place of and person responsible for the

statement; (3) the content and manner in which the statements misled the Plaintiffs;

and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal &*

*Construction Co.*, 482 F.3d at 1316-17  (affirming dismissal of complaint for failure

to meet Rule 9(b) requirements). Plaintiffs must link their specific allegations to the

causes of action pled in their complaint. *Wagner v. First Horizon Pharmaceutical*

*Corp.*, 464 F.3d 1273, 1278-79 (11th Cir. 2006).

Peoples specifically argues that Plaintiffs' proposed claims under § 1962(b), (c), and (d) fail for the following reasons:

(1)     Because Defendant Peoples Independent Bank is a corporation, it cannot be part of an association-in-fact enterprise for purposes of Plaintiffs' claims brought under § 1962(b) and (c);

(2)     Plaintiffs have failed to allege an injury caused by a § 1962(b) violation;

(3)     Plaintiffs' claim under § 1962(c) fails as a matter of law because Plaintiffs have not named a RICO person distinct from the RICO enterprise; and

(4)     Plaintiffs have failed to properly assert a § 1962(d) conspiracy claim because they did not allege facts that Defendants had an agreement to violate a substantive portion of RICO <u>or</u> because there can be no violation of § 1962(d) if Plaintiffs claims under § 1962(b) and (c) are not viable.

The Court will address each argument in turn.[8]

---

[8]   The Court has not considered any arguments Defendant Peoples could have made, but did not raise, when ruling on the instant motion. "Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file." *Williams v. Quality Filters, Inc.*, No. 07-0015-WS-B, 2007 WL 4219201, at *1 (S.D. Ala. Nov. 27, 2007) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could

14

### a.    A corporation can be a member of an association in fact enterprise.

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Supreme Court's decision in *United States v. Turkette*, 452 U.S. 576 (1981), delineates a distinction between the two "categories" of "enterprise" under 18 U.S.C. § 1961(4):  "The first encompasses organizations such as corporations and partnerships, and other 'legal entities.'  The second covers 'any union or group of individuals associated in fact although not a legal entity.'"  452 U.S. at 581-82.  Plaintiffs' Proposed Amended Complaint alleges that the enterprise at issue in this litigation "is an association in fact . . . consisting of each of the two Defendants, Peoples and Sims . . . ."  (doc. 31-2, at ¶ 47, 61).  As such, Plaintiffs have clearly pled their case under the second category of enterprise,

---

be made based upon the materials before it . . . ."); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a ... motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district courts may ignore arguments not adequately developed by nonmovant).  *See also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments").

Moreover, any arguments that were not supported with a pinpoint citation to legal authority have not been addressed.  The Court will not give consideration to arguments that are not fully developed or bolstered with legal authority.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises*, *Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).

the association in fact clause of § 1961(4).

Peoples focuses on the word "individuals" in the association in fact clause of § 1961(4) to argue that Plaintiffs' proposed claims under § 1962(b) and (c) are not tenable.  In its most distilled form, Peoples' argument is that, because a corporation is not a living, breathing "individual," it cannot be a member of an association in fact enterprise.  (doc. 29, at p.2-3).  Specifically, Peoples argues that

> Peoples, a corporation cannot be a part of a RICO association-in-fact because, as a matter of statutory interpretation, the use of "individual" in RICO's definition of "enterprise" refers only to a living person."  *See United States v. Hartley*, 678 F.2d 961, 989 (11th Cir. 1982) ("Section 1961(3) defines 'person' as 'any individual or entity capable of holding a legal or beneficial interest in property.' It is clear from the definition that 'individual' is used differently from 'person' in the act to connote a living person."), *rev'd on other grounds*, *United States v. Goldin Industries, Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000) ("*Goldin I*").

(doc. 29, at p.3-4).

As Defendant's argument is phrased, Defendant is representing to this Court that the law of the Eleventh Circuit, pursuant to *Hartley*, is that a RICO "individual" can only be "a living person."  This Court disagrees with Peoples' interpretation of *Hartley* because it is premised on a mistaken interpretation of that case.

*Hartley* "held that a corporation may be simultaneously named as a liable 'person' and as the 'enterprise' in § 1962(c) actions."  *Goldin I*, 219 F.3d at 1270.

16

This Court reads *Hartley* to have reached *only* that holding.  The aforementioned portion of the *Hartley* decision, on which Peoples relies for the proposition that the law of the Eleventh Circuit is that a corporation cannot be a member of an association in fact enterprise, *is not* the holding of *Hartley*.  The language relied upon by Peoples is found in a footnote of the opinion and is *dicta*.[9]  *See Hartley*, 678 F.2d at 989 n.46.

In the footnote at issue, the *Hartley* court noted the existence of an opinion in which United States District Court for the Eastern District of Virginia "held that a corporate subdivision did not satisfy the enterprise requirement of RICO."  *Id.* (citing *United States v. Computer Sciences Corp.*, 511 F. Supp. 1125, 1131 (E.D. Va. 1981)).  Upon making that observation, the *Hartley* court quoted from the district court's opinion in which that court stated, in part, that "Section 1961(3) defines 'person' as 'any individual or entity capable of holding a legal or beneficial interest in property.'  It is clear from the definition that 'individual' is used differently from 'person' in the act to connote a living person."  *Id.*  It was the district court in *Computer Sciences Corp.*, not the Eleventh Circuit in *Hartley*, that drafted the language that Peoples claims is the law of the Eleventh Circuit.  Moreover, the district court's decision was

---

[9] "All that is said which is not necessary to the decision of an appeal given the facts and circumstances of the case is dicta."  *U.S. v. Lett*, 483 F.3d 782, 790 (11th Cir. 2007) (quoting *Aron v. United States*, 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring)). "The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced the decision."  *Id.* (quoting *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000)).

reversed on appeal, *see United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir. 1982), and, eight years later, the appellate court's decision was, in turn, overruled on other grounds by the Fourth Circuit *en banc*. *See Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990) (*en banc*). In short, this Court concludes that the Eleventh Circuit did not, in *Hartley*, hold that a corporation cannot be a member of an association in fact enterprise.[10]

Moreover, "[s]ince *Hartley*, the trend has clearly been in favor of permitting associations-in-fact to include corporations." *Lockheed Martin Corp. v. Boeing, Inc.*, 357 F.Supp.2d 1350, 1364 (M.D. Fla. 2005)[11] (citing *United States v. Navarro-Ordas*, 770 F.2d 959, 969 n.19 (11th Cir. 1985) (noting that "a group of corporations can be a 'group of individuals associated in fact' within the meaning of the 'enterprise' definition of 18 U.S.C. § 1961(4)"); *United States v. London*, 66 F.3d 1227, 1243 (1st Cir. 1995); *United States v. Blinder*, 10 F.3d 1468, 1473 (9th Cir. 1993); *United*

---

[10] It is also important to stress that *Hartley* was abrogated by the Eleventh Circuit *en banc*. The *en banc* court held that "*United States v. Hartley* is no longer the law of this Circuit." *United States v. Goldin Industries, Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000) (*en banc*) ("*Goldin I*"). Assuming *arguendo* that *Hartley* held as Peoples represents, this Court would nonetheless refuse to blindly follow *Hartley* in that it "is no longer the law of this Circuit."

[11] Plaintiffs and Defendants make reference to *Lockheed Martin Corp. v. Boeing, Inc.*, 357 F.Supp.2d 1350, 1364-65 (M.D. Fla. 2005). In that case, the district court determined that *Hartley* held that a corporation could not be a member of an association in fact enterprise. *See id.* For the reasons stated herein, this Court is not persuaded by the holding in *Lockheed Martin Corp.*, where the court relied on *Hartley* for the proposition that the association in fact clause of § 1961(4) excludes corporations and concluded that *Hartley* is still good law in the Eleventh Circuit.

*States v. Console*, 13 F.3d 641, 652 (3d Cir. 1993); *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 n.7 (8th Cir. 1989); *United States v. Perholtz*, 842 F.2d 343, 353 (D.C. Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979)). *See also United States v. Goldin Industries, Inc.*, 219 F.3d 1271 (11th Cir. 2000) (*"Goldin II"*) (upholding a RICO conviction under § 1961(c) where the association in fact enterprise consisted of individual persons and corporate entities).[12]

Also contrary to Peoples' argument, a district court in the Eleventh Circuit addressed the present issue of whether live persons and corporations can form an association in fact enterprise and held that an association in fact enterprise *could* include an group of living persons and corporations. *See United States v. Thevis*, 474 F.Supp. 134, 138 (N.D. Ga. 1979) (a pre-*Hartley* decision in which a district court was faced with the question of whether a corporation could be a member of an association in fact enterprise and concluded that § 1961(4) "is broad enough to embrace an enterprise defined as a 'group of individuals associated in fact with various corporations.'"). The court offered the following reasoning:

> In answering this new question, this Court is convinced that the RICO enterprise is broad enough to embrace an enterprise defined as a

---

[12] The court in *Goldin II* did not squarely consider the issue of whether a corporation could be a member of an association in fact enterprise.

"group of individuals associated in fact with various corporations." In reaching this conclusion, the Court has relied, as has the defendant, on the language of the statute itself, the Congressional intent, and the traditional canons of statutory construction.

The starting point for analysis of the question presented must be the statute in question, 18 U.S.C. § 1961(4). At the onset, it must be recognized that the definition is neither exhaustive or inclusive, for had Congress intended to strictly limit the forms of potential RICO enterprises, it would have employed the definitional verb "means." *See, Helvering v. Morgan's Inc.*, 293 U.S. 121, 125 n. 1, 55 S.Ct. 60, 79 L.Ed. 232 (1934). As the Supreme Court noted in that opinion, "'(i)ncludes' imports a general class, some of whose particular instances are those specified in the definition." *Helvering v. Morgan's Inc.*, *supra* at 125 n. 1, 55 S.Ct. at 62 (1934). That Congress recognized those definitional distinctions is illustrated by the statute itself. Compare, 18 U.S.C. § 1961(1) ("racketeering activity means . . .") with 18 U.S.C. § 1961(4) ("enterprise includes . . .").

While the outer limits of the RICO enterprise may be obscure, this Court is convinced that the enterprise alleged in the indictment is within the general class set forth in the statutory definition.

The indictment states that the enterprise was "a group of individuals associated in fact with various corporations." Under the statutory definition, the enterprise could be an individual, Atkinson, "Racketeer Influenced and Corrupt Organizations," 18 U.S.C. §§ 1961-68: Broadest of the Federal Criminal Statutes, 69 J.Crim.L.C. 1 (1978), a group of individuals, *United States v. Elliot*, *supra*, or a corporation, *See*, *United States v. Dennis*, 458 F.Supp. 197 (E.D. Mo. 1978). The defendant urges, however, that the enterprise could not be a de facto combination of individuals and corporations: though under the statute, each of the integral parts of this larger enterprise would qualify as an enterprise standing alone.

This narrow view of the defendants overlooks the inclusion of the term "association" within the general class by which enterprise is

defined. Association is "(t)he act of a number of persons in uniting together for some special purpose . . . for good or ill." Black's Law Dictionary, p. 156 (4th Ed.).  The indictment alleges that the enterprise was "a group of individuals associated in fact with various corporations," and this combination of individuals and corporations is an association formed, the indictment alleges, for the particular purpose of operating a pornography business through certain unlawful means.

While it cannot be doubted that the enterprise concept of 18 U.S.C. § 1961(4) has limits, it is not necessary to define those limits in this case, since the Court determines that the alleged combination of individuals associated in fact with various corporations is an association and, thus, an enterprise under 18 U.S.C. § 1961(4).

*Thevis*, 474 F.Supp. at 137-38.  This Court is persuaded by the analysis and holding

of *Thevis*, finds that *Thevis* is consistent with the Eleventh Circuit's finding in

*Navarro-Ordas*, *supra*, that an association in fact enterprise can be made up entirely

of corporations, and reaches the conclusion in the present case that Plaintiffs' alleged

association in fact enterprise consisting of Sims and Peoples (a living person and a

corporation) does not fail, on its face, because it is comprised of a person and an

individual.  This Court does not read § 1961(4) so narrowly as Peoples would like.

In consideration of the foregoing, and in light of the fact that "Congress gave

the term 'enterprise' a very broad meaning," this Court will not, absent binding

authority to the contrary, adopt a holding that the use of the word "individual"[13] in the

---

[13] *Nota bene*: The word "individual" is not defined in RICO.  Notably, the common definition of "individual" is not limited to a living person.  *See* BLACK'S LAW DICTIONARY 789 (8th ed. 2004) (defining "individual" as "[e]xisting as an indivisible entity" or "[o]f or relating to

association in fact clause of § 1961(4) somehow limits, by *expressio unius est exclusio alterius*, an association in fact enterprise to living persons. *United States v. Elliott*, 571 F.2d 880, 897 (5th Cir. 1978). Accordingly, the Court rejects Peoples' argument that Plaintiffs' proposed claims under § 1962(b) and (c) should be disallowed for the reason that a corporation cannot be a member of an association in fact enterprise.

   b.   **Plaintiffs have not asserted a viable claim under § 1962(b) because they failed to allege an "acquisition injury."**

Peoples argues that Plaintiffs "failed to allege . . . that Plaintiffs were injured as a result of Peoples['] interest or control of a separate RICO enterprise." (doc. 29, at p.9-10). "Under § 1962(b), 'it is unlawful for a person to acquire or maintain, through a pattern of racketeering activity, an interest in an enterprise.'" *Fuller v. Home Depot Services, LLC*, 512 F.Supp.2d 1289, 1294 (N.D. Ga. 2007) (citing *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F.Supp.2d 1276, 1288 (S.D. Ga. 2003)). "Thus, sufficiently alleging a § 1962(b) violation requires a complaint to allege injury as a result of the defendant 'acquiring or maintaining, through a pattern of racketeering activity, an interest in or control over such enterprises.'" *Id.* (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)). It is generally accepted

---

a single person or thing, as opposed to a group").

that "§ 1962(b) requires an acquisition injury." *Id. Cf. Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996) ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation"), *vacated on other grounds by NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998); *Compagnie de Reassurance d'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995) (same); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (same); *Danielsen v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991) (same); *Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1219 (5th Cir. 1989) (same).

This Court agrees with Peoples' assertion that Plaintiffs have failed to allege an acquisition injury. Plaintiffs' Proposed Amended Complaint parrots the language of § 1962(b) in that Plaintiffs allege that Defendants' maintenance of the alleged enterprise caused Plaintiffs to suffer injury. A close reading of Plaintiffs' allegations, however, reveals that "Plaintiffs' injuries were directly and proximately caused by Defendants' racketeering activity." (doc. 31-2, at ¶ 58). A plaintiff's injuries resulting from a RICO defendant's commission of a predicate act (in this case mail and wire fraud) is not, as a matter of law, tantamount to an "acquisition injury." *See*, *e.g.*, *Discon, Inc.*, 93 F.3d at 1063 ("Discon has not alleged any injury stemming from

the 'acquisition or maintenance' of [RICO enterprises], only injuries resulting from the commission of predicate acts. Without a distinct 'acquisition injury,' Discon cannot state a cause of action under subsection 1962(b)."); *Fuller*, 512 F.Supp.2d at 1294 ("while the plaintiff does allege that Home Depot acquired an interest in an enterprise through its racketeering activity (mail and wire fraud), the plaintiff does not allege that his injury resulted from Home Depot's alleged acquisition. Rather, the only injury alleged in the complaint is that the plaintiff was charged money by Home Depot during the commission of its predicate acts."). Similar to the plaintiff in *Fuller*, Plaintiffs here allege that they were unlawfully deprived of funds, paid various fees, sustained business losses, and suffered damaged credit *all* as a result of the underlying predicate acts. Stated differently, Plaintiffs have not alleged that they were injured due to any of Defendants' actions beyond the predicate acts necessary to form and maintain a RICO enterprise.

Accordingly, the Court concludes that, because Plaintiffs have not alleged an "acquisition injury," they cannot sustain a claim under § 1962(b). Consistent with the authority discussed *supra*, when confronted with a plaintiff who has failed to plead an "acquisition injury," courts have traditionally dismissed the claim. Moreover, because of the detailed factual allegations in the Proposed Amended Complaint, there is no basis to conclude that Plaintiffs could plead sufficient facts to allege an

24

"acquisition injury" under § 1962(b), nor is the Court inclined to grant Plaintiffs another attempt to articulate a § 1962(b) claim.  Therefore, granting Plaintiffs' petition to file the Proposed Amended Complaint, as it is written, would be an exercise in futility with regard to Plaintiffs' claims under § 1962(b).  *See Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (recognizing that a district court appropriately exercises its discretion in denying leave to amend when such amendment would be futile).  Therefore, Plaintiffs will not be permitted to file an amended complaint that contains claims under § 1962(b).

### c.  Plaintiffs have named a RICO person distinct from the RICO enterprise for purposes of their claim under § 1962(c).

Peoples' contention that Plaintiffs have not named a RICO person that is distinct from the alleged association in fact enterprise is without merit.

"RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or part of the person." *Goldin II*, 219 F.3d 1271, 1276 (11th Cir. 2000).  In order to "establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).

Plaintiffs allege that the relevant RICO enterprise is an association in fact

between Sims (an employee of Peoples) and Peoples.  Peoples' argument is that

Plaintiffs

> really allege nothing more than Sims' abuse of People's [sic] Business
> Manager Program to steal funds that Plaintiffs claim resulted in RICO
> injury to Plaintiffs.  However, because the Business Manager program
> was "nothing more than a subdivision or part of" Peoples, Plaintiffs
> have not stated the existence of a RICO enterprise that will support a
> claim of civil RICO liability under § 1962(c) against Peoples.

(doc. 29, at p.7-8).

Peoples' argument appears to be rooted in a misinterpretation of Plaintiffs'

Proposed Amended Complaint.  Peoples ignores Plaintiffs' clear and plain allegation

that the RICO enterprise consists of Sims and Peoples.  The alleged enterprise is not,

as Peoples construes it, Sims' unilateral actions, performed without the knowledge

or consent of Peoples, involving the Business Manager Program.  In the Proposed

Amended Complaint, Plaintiffs allege wrongdoing on the part of Peoples as well.

Plaintiffs aver that Sims and Peoples acted in tandem to defraud Plaintiffs when

conducting the alleged enterprise's affairs through a pattern of mail and wire fraud.

In that regard, Plaintiffs have sufficiently alleged the existence of an association in

fact enterprise consisting of two distinct "persons" (*i.e.*, Peoples and Sims), and that

the enterprise is a separate entity from each of those "persons" individually.  An

allegation, not proof, is all that is required at the pleadings stage.  *See King*, *supra*.

Moreover, insofar as Peoples' argument can be read to suggest that Sims, its employee, is nothing more than a subdivision of Peoples, the Court rejects that position.   In *King*, the Supreme Court determined that, for purposes of RICO, a corporate employee is "distinct" from the corporation itself, even where the employee is acting within the line and scope of his employment or he "conducts the affairs of the corporation through illegal acts."[14]  *King*, 533 U.S. at 2091.

Therefore, Peoples' argument that Plaintiffs have not alleged an enterprise that

---

[14] The relevant language from *King* reads as follows:

The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in [RICO] that requires more "separateness" than that. *Cf. McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) (finding either formal or practical separateness sufficient to be distinct under § 1962(c)).

Linguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual ... capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation." 18 U.S.C. §§ 1961(3), (4). And, linguistically speaking, the employee and the corporation are different "persons," even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs. *See United States v. Bestfoods*, 524 U.S. 51, 61-62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); *Burnet v. Clark*, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397 (1932); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7, 14 (rev. ed.1999).

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

is separate and distinct from the persons who make up the enterprise is rejected.  As such, Peoples has not demonstrated that Plaintiffs' proposed claim under § 1962(c) is futile.  Consequently, Plaintiffs will be granted leave to file an amended complaint that contains its proposed § 1962(c) claim.

> **d.** **Plaintiffs have not adequately pled a violation of 18 U.S.C. § 1962(d).**

As it is pled in the Proposed Amended Complaint, Plaintiffs' § 1962(d) claim cannot survive a motion to dismiss.  Plaintiffs do nothing more than put forth vague, conclusory allegations in support of their claim under § 1962(d).

Most damning, however, is that Plaintiffs fail to allege an actual conspiracy between Defendants.  "[W]hat is required to support a claim of RICO conspiracy is that plaintiffs allege an illegal *agreement* to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004) (emphasis supplied).  Stated another way, "[t]he essence of a RICO conspiracy claim is that each defendant has agreed to participate in the conduct of an enterprise's illegal activities." *Solomon v. Blue Cross and Blue Shield Ass'n*, 574 F.Supp.2d 1288, 1291 (S.D. Fla. 2008).  "A complaint for RICO conspiracy must therefore describe the alleged agreement to perform at least two of the predicate acts." *Id.* (internal marks and citations omitted).  As noted in *Solomon*, "[t]he Eleventh

Circuit has affirmed the dismissal of RICO claims where the allegations of conspiracy were 'merely conclusory and unsupported by any factual allegations.'" *Id.* at 1291-92 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir.1997)).

This Court also agrees with the gloss to *Twombly* provided by the district court in *Solomon*:

> The *Twombly* decision . . . adds new bite to the RICO requirement that the Plaintiffs describe the agreement to conspire in the complaint. The Plaintiffs in *Twombly* alleged a conspiracy among certain regional telecommunications providers. The complaint in *Twombly* relied on allegations of the defendants' parallel behavior to infer conspiracy. The Supreme Court upheld the dismissal of the complaint because "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). The Supreme Court explained that "without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id*. The Supreme Court observed that the complaint "mentioned no specific time, place, or person involved in the alleged conspiracies" leaving the defendants "little idea where to begin" in formulating their answers. *Id*. at 1970 n. 10.

*Solomon*, 574 F.Supp.2d at 1292.

This Court finds that both *Twombly* and the heightened pleading requirements associated with a RICO claim warrant the conclusion that Plaintiffs have failed to adequately plead a § 1962(d) claim. The appropriate remedy in such cases is for a

court to dismiss the claim.  Accordingly, Plaintiffs' motion for leave to file the Proposed Amended Complaint is due to denied as to Plaintiff's claim under § 1962(d) due to the futility of the proposed claim.

### e.   Plaintiffs' state law claims

Plaintiffs have asserted the following state law claims in the Proposed Amended Complaint: (1) breach of contract (Count Four); (2) fraud and deceit (Count Five); (3) conversion (Counts Six and Seven); (4) outrage (Count Eight).  Those claims are identical to the claims brought in the original Complaint.  (doc. 1).

Peoples takes a roundabout way of arguing that the foregoing state law claims are untenable.  Specifically, in its brief in opposition to the instant motion (doc. 32), Peoples does not raise any specific arguments against Plaintiffs' proposed state law claims.  Instead, Peoples incorporates by reference its response to Plaintiffs' Motion to Reconsider (doc. 29) which, in turn, "incorporates and restates" Peoples' Motion to Dismiss (doc. 12) and Reply in Response to Plaintiffs' Opposition to the Motion to Dismiss (doc. 21).  Presumably, it is in those last two documents that the Court is to find Peoples' opposition to the state law claims asserted in the Proposed Amended Complaint.  In the face of Peoples' references to the contents of previously filed briefs, this Court is reminded of an observation made by the Court of Appeals for the Seventh Circuit: "Judges are not like pigs, hunting for truffles buried in briefs."

*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

This Court and opposing counsel should not have to sift through the contents of previously filed motions or briefs in an effort to uncover Peoples' arguments with regard to the motion at bar. Such a task places an unfair burden on Plaintiffs to formulate a response to Peoples' arguments and on the Court to distill the essence of Peoples' opposition. This is particularly so in this instance, where Peoples references a brief that then references and restates a motion to dismiss and a reply brief.

Because Peoples chose to file a brief in opposition to the instant motion, but did not therein set forth its arguments regarding Plaintiffs' state law claims, the Court finds that Peoples has waived any such arguments for the purposes of opposing the present motion. If it so chooses, Peoples may attack the merits of Plaintiffs' state law claims after an amended complaint is filed with the Court.

## IV.   Conclusion and Order

Consistent with the foregoing, the Court **ORDERS** as follows:

(1)    Plaintiffs' Amended Motion to Reconsider (doc. 31) is **GRANTED** to the extent that this case will be reopened for the purpose of allowing Plaintiffs an opportunity to file an amended complaint that is consistent with this Memorandum Opinion and Order.

(2)    Plaintiffs' Request for Leave to Amend the Complaint (doc. 31) is

**GRANTED**.  However, the Proposed Amended Complaint, as written, asserts claims that are untenable.  Plaintiffs are granted leave to file an amended complaint that asserts the same facts and legal claims as are found in the Proposed Amended Complaint, but that omits any claims under § 1962(b) and (d).[15]  That amended pleading must be filed within seven (7) calendar days from the date of this Order.  If Plaintiffs fail to file an amended complaint that complies with this Order within that time, this case will remain closed.

(3)     Plaintiffs' Motion to Reconsider (doc. 28) is **DENIED** as moot.

**DONE** and **ORDERED** this the 17th day of November, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[15] If Plaintiffs believe they have a basis, in accordance with FED. R. CIV. P. 11, to allege facts that support a claim under § 1962(d), then Plaintiffs proper course is to file a motion for leave to file an amended complaint that asserts a § 1962(d) claim.  Such a motion shall only be brought after Plaintiffs have filed the amended complaint required by this Order.  Plaintiffs are cautioned, however, that they must plead any conspiracy claim with specificity.  That is, Plaintiffs *must* describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.  Neither conclusory allegations nor the suggestion that a conspiracy should be inferred from the alleged facts of this case will suffice.

32